274 So.2d 658 (1973)
Marvin SEXTON
v.
STATE of Mississippi.
No. 47212.
Supreme Court of Mississippi.
March 12, 1973.
Wilroy & Hagan, Richard J. Lee, Hernando, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
*659 RODGERS, Presiding Justice.
The appellant Marvin Sexton was indicted for the crime of murder by a grand jury of DeSoto County, Mississippi. He was tried and convicted by a jury of that county and sentenced to serve a term of life imprisonment in the state penitentiary. The appellant has appealed and now complains to this Court that he did not get a fair trial in the circuit court for the following reasons.
First, it is said that the state did not prove the corpus delicti.
Second, the trial judge did not give the appellant an instruction on "intent" nor an instruction on manslaughter.
The testimony shows that the defendant Marvin Sexton and Chester Wrzeniewski started drinking beer at noon on February 24, 1971, and continued to drink until five o'clock in the afternoon. At that time both were drunk, but the appellant left the home of Wrzeniewski and went to his home in a trailer. The appellant changed his clothes and went over to his brother-in-law's, Mr. Langston's home, a distance of two or three hundred yards. He was invited into the Langston home where he began to curse and accuse Mr. Langston of running him away from his home on the hill. Langston got up out of his chair and struck the appellant; whereupon, one Eugene Looney, who was present, got between Mr. Langston and appellant. Langston got a .38 Derringer pistol and told Mr. Looney that he was going to shoot the appellant. At this point the appellant left the Langston house and returned to his trailer. He then got his 30:06 Remington rifle and fired at the Langston home several times. Eugene Looney hollered and told appellant that he had hit Mr. Langston and asked him to come and help him. The appellant did not go, however, but went after his cousin who did go over to the Langston house. When the officers came, the appellant returned to the Langston home where he was arrested by the officers. One of the officers testified that while they were *660 investigating the crime, the appellant came to them and said that he was responsible for the shooting and wanted to give himself up.
The appellant bases his first contention, that the state failed to prove the corpus delicti, upon the thesis that (1) the testimony does not show how the deceased lost his life, or that (2) he died as a result of a gunshot wound.
This Court has repeatedly held that the burden upon the prosecution to establish the corpus delicti in homicide cases consists of two essential requirements. The state must show that the alleged deceased is in fact dead, and that he died as a result of a criminal agency. See the cases cited in Elliott v. State, 183 So.2d 805 (Miss. 1966). See also King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
We said in Elliott that "The first element was proven in this case without question. The second element may be proven by circumstantial evidence and by reasonable inferences to be drawn from the evidence." 183 So.2d at 810.
In the case now before this Court, the evidence shows that Mr. Langston is dead. The defendant admitted that he was shooting a high-powered rifle at the home of the deceased and that his friend Mr. Looney called out to him at the time of the shooting asking for help and telling him that he had hit Mr. Langston. Defendant's sister, Mrs. Langston, who was in the house at the time, testified for defendant that "My husband hollered at me to come in the bedroom that he had seen Marvin coming with his gun, and I didn't listen to him, and the next thing I know, he was shot. He was shooting through the house.
There are pictures in evidence in the record showing the wound on the head of the deceased Mr. Langston. The sheriff testified that the defendant came up to them and stated that he was responsible for the shooting. The direct evidence in this case shows that the defendant was angry with the deceased; that he knew the deceased was in his house and that he shot where the deceased was located; that the bullets were going through the house; that the deceased called his wife, and when the shooting occurred he fell; Mrs. Langston went to her husband and he had been shot or at least he had a hole in his head.
The testimony in this case is ample to establish the corpus delicti without the testimony of the doctor who examined the deceased. His testimony that "It was my understanding that it was due to a gunshot wound" does not raise an inference that there existed some other reasonable hypothesis as to the cause of the death of Mr. Langston. The direct evidence, including the picture of the deceased, is ample testimony to establish criminal agency resulting in the death of Mr. Langston.
1. The appellant made a motion at the close of all the evidence in which he requested the trial court to direct the jury that they could find the defendant guilty of no greater crime than manslaughter. Thereafter the defendant offered a written instruction to the same effect. The motion and the written instruction were denied by the court.
Appellant admits that an instruction given the state cured the alleged failure of the court to grant defendant an instruction on intent. The appellant argues, however, that the trial judge was "... placed on notice by his written request that the Defendant desired an instruction defining manslaughter as related to this particular case ..."
2. As far back as 1882 this Court said in Watkins v. State, 60 Miss. 323, that "[I]t is manifest from the language of the statute that the Legislature intended to deny the judge the power of originating independent instructions of its own motion, not called for or rendered necessary by those requested by counsel." 60 Miss. at 325.
*661 In Edwards v. State, 47 Miss. 581 (1873), this Court said "... [E]ven if warranted by the facts, the court was not authorized to instruct, except on request." 47 Miss. at 589. See also Gangloff v. State, 232 Miss. 395, 99 So.2d 461 (1958).
Moreover, Section 1530, Mississippi Code 1942 Annotated (1956) expressly requires that "All instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing ..."
3. The argument that the trial judge should have written a jury instruction for defendant defining manslaughter is not well taken.
If the defendant were entitled to an instruction on manslaughter he should have submitted a manslaughter instruction to the Court. We said in Cosey v. State, 161 Miss. 747, 138 So. 344 (1931):
"In early cases under this statute there were two decisions which, in effect, held that the court should require the district attorney to obtain instruction on manslaughter where the evidence warranted a theory of manslaughter. The court, however, is now fully committed to the doctrine that the court is not required to give an instruction not requested either by the state or by the defendant. Citing many cases." 161 Miss. at 755, 138 So. at 345-346.
The court did not err in failing to grant a manslaughter instruction in this case.
The crime of murder is defined in Section 2215, Mississippi Code 1942 Annotated (1956) in the following language:
"The killing of a human being, without the authority of law, by any means or in any manner, shall be murder in the following cases:
(a) When done with deliberate design to effect the death of the person killed, or of any human being;
(b) When done in the commission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premediated (sic) design to effect the death of any particular individual;
(c) When done without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, arson or robbery, or in any attempt to commit such felonies."
The issue as to whether or not the defendant was guilty of murder as defined by the statute was an issue for the jury. We find no reversible error in the record; therefore, the sentence and judgment of the trial court are affirmed.
Affirmed.
INZER, ROBERTSON, WALKER and BROOM, JJ., concur.